399 A.2d 735

COMMONWEALTH of Pennsylvania

v.

**Joanne Carol BILLIG, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided March 9, 1979.

200

Richard M. Meltzer, Philadelphia, for appellant.

Lois Sherman Hagarty, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before CERCONE, SPAETH and LIPEZ JJ.

LIPEZ, Judge:

Defendant was convicted in a trial by jury of Theft of Movable Property, Theft by Deception, Criminal Conspiracy and Receiving Stolen Property. Post verdict motions were denied and she was sentenced to a term of imprisonment of not less than four months nor more than five years, a fine and costs and directed to make restitution. In her appeal to this court she alleges numerous errors. However, in view of the disposition we make, we consider only one.

The evidence may be summarized as follows:

On Sunday morning, October 17, 1976, defendant reported to the Haverford Township Police that her credit cards, including one issued by Bonwit Teller Department Store, had been stolen from the glove compartment of her car the previous night. On October 18, defendant and another woman made purchases at Bonwit Teller. A credit card issued to the defendant was used for each purchase. On Tuesday, October 19, the defendant called Bonwit Teller and reported that her credit card had been stolen on October 16.

That same day, the store management discovered the sales charged to that card on the 18th and notified the police. After investigation by the police the defendant was arrested on the foregoing charges. At the trial 5 Bonwit Teller saleswomen identified the defendant as having been in the store on the 18th, four of whom testified they had transacted credit sales with her on that date.

Defense counsel cross-examined two of the Commonwealth witnesses, Sandra Cohen and Jennie Levin, as to a photo array one week after the events. They testified that they were unable to identify the defendant's photo, which was included in the array. No such questions were asked of the other three witnesses. The Commonwealth then called Detective Metz who had conducted the array a week after the occurrence, and over defense objection was permitted to testify that Sandra Cohen and Jennie Levin did not identify the defendant, but that the other three witnesses did.[1] We think this was reversible error.

1. The court below, in its opinion refusing a new trial referring to Detective Metz' testimony, stated, "Detective Metz was permitted to testify that two * Commonwealth witnesses had positively identified the Defendant from the photographic display. This was to counter defense counsel's tactic of cross-examining the two identifying witness at trial who recognized no one in the photo display and not questioning those who had selected the Defendant's photograph. Prior to this testimony, defense counsel asked for an offer of proof. He then objected on the ground that the Detective's testimony was hearsay. At this time, the Commonwealth offered to dispense with Detective Metz' testimony and instead recall two witnesses who had identified defendant. Defense counsel did not choose this alternative." The court gives no reason for this ruling. The Commonwealth argues that defendant waived her objections to its admissibility by not accepting the Commonwealth offer. The theory on which this argument is based or for the imposition of such a choice on the defendant eludes us. Defense counsel was amply justified in refusing the offer.

* The testimony shows it was in fact three such witnesses.

The situation here is distinguishable from *Com. v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978), where a police officer was asked for the first by the defense on cross-examination, how many people had identified the defendant as being the "doer" (a murder charge). He stated "three" (later two). On redirect examination, he was asked, by the prosecutor, the same question, which he answered, over objection "two"—giving their names. The court held the answer to

 Ordinarily a witness' prior statement is not admissible to corroborate or substantiate present testimony. However, as an exception to the hearsay rule it is admissible as a prior consonant statement if it is alleged the present testimony is recently fabricated or that the witness is testifying from corrupt motives. *Com. v. Ravenell,* 448 Pa. 162, 169, 292 A.2d 365 (1972). It is admissible not as to the truth of the stated facts, but solely to bolster credibility. *Com v. Martin,* 124 Pa.Super. 293, 188 A. 407 (1936). The prior consonant rule is not only applicable to statements, but to identification testimony as well. *Com. v. Westwood,* 324 Pa. 289, 306, 188 A. 304, 311 (1936). The testimony of the detective as to the acts of identification by the witnesses at the photo array is, we think, "on a parity . . . with any purely verbal statements." *See McCormick on Evidence* 2nd Ed. 596. Therefore at least as to the three witnesses who had not been cross-examined as to the prior photo-identification, the admission of the detective's testimony was error.

 The Commonwealth argues that the admission of such evidence, if hearsay, was harmless because testimony concerning the photo-identification was cumulative and its impact was de minimis. An error, whether it involves state or constitutional law, can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. The burden of establishing that error rests with the Commonwealth. *Commonwealth v. Story,* 476 Pa. 391, 405–406, 383 A.2d 155, 162 (1978). It is harmless only if it could not have contributed to the verdict. Whenever there is a "reasonable possibility" that an error might have contributed to the conviction, the error is not harmless. *Story,* supra, 476 Pa. at 409, 383 A.2d at 164. Having set forth the general principles, we now consider their application in the light of a number of specific holdings by our

be harmless, inasmuch as "[d]efense counsel himself had revealed that appellant had been identified by two people . . . ."

The redirect examination in *Slaughter* could also be sustained on the ground that it met matters brought out on cross-examination. *Com. v. McDowell,* 460 Pa. 475, 333 A.2d 872 (1975).

Supreme Court (all of which were reviewed in *Story*) and the circumstances disclosed here.

■■■ The determination that the error did not affect the jury's verdict may be reached as a result of a finding that the impact of the challenged evidence is de minimis. *Commonwealth v. Laws*, 474 Pa. 318, 378 A.2d 812 (1977); or that the improperly admitted evidence in no way advanced the Commonwealth's case, *Commonwealth v. London*, 461 Pa. 566, 576, 337 A.2d 549, 554 (1975), or that it benefited the defense, *Commonwealth v. Carr*, 459 Pa. 262, 266, 328 A.2d 512, 513 (1974). Even where improperly admitted evidence has been found prejudicial it has been held harmless where its impact is insignificant, such as when the erroneously admitted evidence was only remotely connected with the material issues in the case. *Commonwealth v. Rogers*, 463 Pa. 399, 407, 344 A.2d 892, 896 (1975).

Detective Metz's testimony concerning the two witnesses who failed to identify defendant at the photo spread helped the defendant and hence was harmless. *Carr*, supra. However, his testimony as to the three witnesses who identified defendant from the photo spread was clearly prejudicial inasmuch as its effect was to corroborate and buttress their in-court identifications, the most material element in linking the defendant to the crime.

■■■ Even where the impact of the erroneously admitted evidence is not de minimis its admission may still constitute harmless error if it was merely cumulative of properly admitted evidence. *Commonwealth v. Story*, supra; *Commonwealth v. Laws*, supra.

In *Laws*, supra, 474 Pa. at 329, 378 A.2d at 817 it was suggested that three requirements must be met before a court may conclude that improperly admitted evidence was merely cumulative of other evidence presented and therefore did not affect the jury verdict:

(1) There should be a substantial similarity, in the type of evidence and the incriminating factual details between the tainted evidence and the untainted evidence of which it is

"cumulative." (2) The untainted evidence should be indisputable, either because the facts are in some way affirmatively accepted by the defendant or for other reasons. (3) Care should be taken that the "untainted" evidence in no way derives from the tainted evidence.[2]

We think it fails to meet the first requirement.[3] While the incriminating factual details are the same in both the pre-trial photo identification and in-court identification, this does not suffice. To find the "substantial similarity" between the untainted evidence and the tainted evidence, the former must have probative value equal to or superior to the latter. *Field*, supra, at 44. Here the erroneously admitted photo-identifications occurring only one week after the crime undoubtedly had greater impact and hence superior probative value than the in-court identifications made six months after the crime. *See Com. v. Saunders*, 386 Pa. 149, 155, 125 A.2d 442 (1956). It was, therefore, not merely cumulative of the other evidence. The Commonwealth having failed to meet its burden of proving that the error did not affect the jury verdict, a new trial must be granted.

█ Judgment of sentence reversed and a new trial granted.[4]

CERCONE, President Judge, concurs in the result.

2. M. Field, *Assessing Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale*, 125 U.Pa.L.Rev. 15, 55 (1976), *quoted in Com. v. Laws*, supra, 474 Pa. at 329, 378 A.2d at 817.
 In *Commonwealth v. Story*, supra, the Supreme Court again quoting the above from *Field* stated (footnote 21), "The theory [underlying the cumulative evidence approach] is that the tainted evidence added nothing to the government's case, and the error is therefore harmless."

3. In view of our decision that the testimony fails to meet the first requirement, we need not discuss the second and third parts.

4. Since a new trial is required, and in the interest of judicial economy, we call attention to another trial error. During cross-examination, defense counsel elicited from two of the Commonwealth witnesses the fact that they had been interviewed by an assistant district attorney. At side bar the assistant admitted she had taken notes of the interviews. The trial court refused to order the notes produced for the defendant's examination based on the assistant's

statement that they were scribbled notes of the interview, the court ruling they were her work product. *Com. v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977), and *Com. v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976), specifically hold that the prosecution must allow the defense to examine in their entirety statements which the Commonwealth has in its possession of prosecution witnesses who testified, subject to appropriate safeguards where necessary. The rule is applicable to reports as well as statements. *Com. v. Morris,* 444 Pa. 364, 281 A.2d 851 (1971). We see no difference in principle between reports and notes.