J-S60006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TYREE BASS, | |
| Appellant | No. 2845 EDA 2014 |

Appeal from the PCRA Order Entered September 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0005903-2008
CP-51-CR-0005904-2008
CP-51-CR-0005905-2008

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 20, 2015**

Appellant, Tyree Bass, appeals *pro se* from the September 12, 2014 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

The facts and procedural history of Appellant's case are set forth in the PCRA court's opinion, and we need not reproduce them herein.  **See** PCRA Court Opinion (PCO), 12/17/14, at 1-4.  However, we note that Appellant was convicted, following a jury trial, of second-degree murder, attempted murder, aggravated assault of an unborn child, conspiracy to commit arson, and possessing an instrument of crime.  On April 22, 2010, he was sentenced to an aggregate term of life imprisonment, without the possibility of parole, plus a consecutive term of 35½ to 75 years' incarceration.  On

June 7, 2011, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied his subsequent petition for permission to appeal. *Commonwealth v. Bass*, No. 1640 EDA 2010, unpublished memorandum (Pa. Super. filed June 7, 2011), *appeal denied*, 32 A.3d 1274 (Pa. 2011).

Appellant filed a timely, *pro se* PCRA petition on August 21, 2012. Counsel was appointed, but rather than filing an amended petition on Appellant's behalf, counsel filed a petition to withdraw and 'no merit' letter in accordance with *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1998), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). On April 14, 2014, the PCRA court filed a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition, and Appellant filed a *pro se* response. On September 12, 2014, the PCRA court issued an order dismissing Appellant's petition and granting PCRA counsel's petition to withdraw. Appellant filed a timely, *pro se* notice of appeal, and also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In that statement, Appellant preserved the following four issues for our review:

> a. [T]he [PCRA] [c]ourt committed an error of law by determining that trial counsel[,] Gary Sanford Server and W. Fred Harrison, [were] not constitutionally ineffective in that trial counsel permitted, without objection, the jury to review during deliberation the unduly suggestive photo-array without also having the related witnesses[',] Cassandra Cook-Powell and Kenneth Watts[,] statements to police;
>
> b. [T]he [c]ourt committed an error of law by determining that trial counsel's [*sic*] were not constitutionally ineffective for failing

- 2 -

to move to stricken [*sic*] prejudicial hearsay testimony elicited from Kevin Cook, and failing to request [] a curative instruction;

c. [T]he [c]ourt committed an error of law by determining that trial counsel's [*sic*] were not constitutionally ineffective for failing to investigate and call critical/potential witnesses for the defense, interview them and, afterwards, call them to testify at trial, who were mentioned in the discovery materials as having been with the victim's [*sic*] or near the crime scene when the shooting occurred, and trial counsel's [*sic*] failed to explore all available alternatives to assure that the jury heard the testimony of these known witnesses, to-wit, Belinda Hamilton and Omar, whom [*sic*] testimonies could have been capable of casting doubt upon the prosecution witnesses['] truthfulness;

d. [T]he [c]ourt committed an error of law by denying [Appellant's] petition for post-conviction collateral relief without a hearing pursuant to Pa.R.Crim.P. 907, and by denying [Appellant's] request for permission for leave to amend his PCRA petition to add a claim of ineffective assistance of counsel rendered by PCRA counsel James Lammendola, Esquire[], in conformity with the [p]rescripts delineated under Pa.R.Crim.P. 905(A), as requested in "Petitioner's Response to the Court's Proposed Dismissal/Disposition Without Hearing Pursuant to Pa.R.Crim.P. 907" dated August 25, 2014.

Rule 1925(b) Statement, 10/24/14, at 1-2 (unnumbered; emphasis and unnecessary capitalization omitted).

In Appellant's brief to this Court, he does not present any argument regarding issues (b) or (d). Therefore, those claims are waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted). Additionally, in issue (c) of Appellant's Rule 1925(b) statement, he refers only to trial counsel's failure to call Belinda Hamilton and an individual

named "Omar." Accordingly, in the PCRA court's Rule 1925(a) opinion, it only addresses counsel's failure to call these two witnesses. *See* PCRA Court Opinion (PCO), 12/17/14, at 8-10. In Appellant's brief to this Court, however, he adds several more individuals whom counsel purportedly should have called as defense witnesses. *See* Appellant's Brief at 27. By not referring to these additional witnesses in his Rule 1925(b) statement, Appellant has waived review of his claim that counsel was ineffective for failing to properly investigate, and/or call to the stand, these individuals.[1] *See* Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

In regard to the issues properly preserved by Appellant in his Rule 1925(b) statement and argued in his brief, we have thoroughly reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the opinion of the Honorable Glenn B. Bronson of the Philadelphia County Court of Common Pleas. We conclude that Judge Bronson's well-reasoned decision accurately disposes of

---

[1] We note that the PCRA court's order directing Appellant to file a Rule 1925(b) statement informed Appellant that any issues not raised in his concise statement would be deemed waived. *See* PCRA Court Order, 10/3/14.

Appellant's two preserved claims, *i.e.*, issues (a) and (c) in his Rule 1925(b) statement. **See** PCO at 5-7 (discussing Appellant's issue (a)); 8-10 (assessing Appellant's issue (c)). Accordingly, we adopt Judge Bronson's opinion as our own and affirm the order denying Appellant's PCRA petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2015

*11 pgs.*

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | **FILED** | CP-51-CR-0005903-2008 |
| | DEC 17 2014 | CP-51-CR-0005904-2008 |
| v. | | CP-51-CR-0005905-2008 |
| TYREE BASS | Criminal Appeals Unit First Judicial District of PA | |

CP-51-CR-0005903-2008 Comm. v. Bass, Tyree
Opinion



7235702911

OPINION

BRONSON, J.                                                       December 17, 2014

## I. PROCEDURAL BACKGROUND

On March 3, 2010, following a jury trial before the Honorable Carolyn Engel Temin, defendant Tyree Bass was convicted of one count of second-degree murder (18 Pa.C.S. § 2502(b)), one count of attempted murder (18 Pa.C.S. § 901), one count of aggravated assault of an unborn child (18 Pa.C.S. § 2606), conspiracy to commit arson (18 Pa.C.S. § 903), and one count of possessing an instrument of crime (18 Pa.C.S. § 907). On April 22, 2010, Judge Temin imposed an aggregate sentence of life without parole plus 35 ½ to 75 years incarceration. Defendant filed post-sentence motions, which Judge Temin denied on May 17, 2010. Defendant was represented at trial and at sentencing by Gary Server, Esquire, and Fred Harrison, Esquire.

On June 7, 2011, the Superior Court affirmed defendant's judgment of sentence. On November 14, 2011, the Supreme Court of Pennsylvania declined to hear defendant's petition for appeal. Defendant was represented on appeal by Mr. Server. Defendant then filed a *pro se* petition under the Post-Conviction Relief Act ("PCRA") on August 21, 2012. James Lammendola, Esquire was appointed to represent defendant on July 12, 2013.

On February 11, 2014, pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), Mr. Lammendola filed a letter stating there was no merit to defendant's claims for

collateral relief. *See Finley* Letter of James Lammendola, Esquire, filed 2/11/2014 (*"Finley* Letter"). Since Judge Temin had retired from the bench, this matter was then assigned to the undersigned judge on February 21, 2014. On April 14, 2014, the Court issued notice pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intent to dismiss defendant's PCRA Petition without an evidentiary hearing. Defendant filed a response to the 907 Notice ("907 Response") on August 28, 2014. On September 12, 2014, the Court formally dismissed defendant's PCRA Petition and granted Mr. Lammendola's motion to withdraw his appearance.

Defendant has now appealed the Court's dismissal of his PCRA Petition, alleging that: 1) counsel was ineffective for permitting the jury, while deliberating, to review defendant's photo-array without also having the statements to police made by witnesses Cassandra Cook-Powell and Kenneth Watts; 2) counsel was ineffective for failing to move to strike prejudicial hearsay testimony from witness Kevin Cook, and for failing to request a curative instruction; 3) counsel was ineffective for failing to investigate, interview, and call as witnesses, Belinda Hamilton and "Omar"; and 4) the Court erred by denying defendant's PCRA Petition without a hearing and by denying defendant's request to amend his Petition to add a claim of ineffective assistance of PCRA counsel. Defendant's Concise 1925(b) Statement of Matters/Errors Complained of on Appeal ("Statement of Errors") at ¶¶ 2(a)-2(d). For the reasons set forth below, defendant's claims are without merit, and the PCRA Court's order dismissing his PCRA Petition should be affirmed.

## II. FACTUAL BACKGROUND

The factual background of this matter is set forth in Judge Temin's Opinion on direct appeal:

> A few days prior to January 21, 2009, Kenny Watts ("Watts") introduced his friend, Cassandra Cook-Powell ("Cook-Powell"), to his other friend, [defendant]. They spoke on the telephone and the two entered into an arrangement whereby [defendant] was to pay Cook-Powell $1,000 in exchange for Cook-Powell providing [defendant] with

2

information that would allow him to get a tax refund of several times that amount. [Defendant] never paid Cook-Powell.

At this time, Cook-Powell was living with her husband, Charles Powell ("Powell"), and their two children at the residence of her brother, Kevin Cook ("Cook") at 1524 Overington Street. Cook's pregnant girlfriend, Emine Hajrejinaj ("Emine") also lived at this residence, as well as Michael Green ("Green"), the Cook's [sic] teenage cousin.

When [defendant] did not pay Cook-Powell as per their arrangement, she called Watts and explained the situation. Watts called [defendant] and told him that Cook-Powell wanted her money. [Defendant] asked Watts, "Do I need to get my pump?" referring to a shotgun.

The next day, January 27, 2008, when Cook-Powell still had not received her money, she went to [defendant's] house at 1519 Adams Avenue, around the corner from the Cook residence. Cook drove her to [defendant's] house. He remained in his car and watched as Cook-Powell picked up two bricks and threw them through [defendant's] windows, breaking the glass.

[Defendant's] girlfriend called Watts and ranted about their windows. Watts heard [defendant] in the background say, "Its on and popping." Watts called Cook-Powell and told her that [defendant] was furious about his windows and warned her to "watch her back."

On January 31, 2008 at approximately 1 a.m., Emine drove Cook's Chrysler Sebring to McDonald's with Cook in the passenger seat. The rest of the people living at the residence remained at home. The couple returned home approximately fifteen minutes later and as they pulled up to the residence, they saw [defendant] and another male standing outside their house. Cook knew [defendant] because they had met earlier in the week and spent a few hours together drinking beers at Cook's house. Cook noticed that [defendant] had a shotgun and he also saw a red gas can and two Snapple bottles. Cook rolled down the window and asked [defendant] what he was doing. Cook told [defendant] that his sister was not home, that there were kids in the house, and that his girlfriend, Emine, was pregnant. He told [defendant] to go home. The two men talked for three or four minutes. Although Book [sic] begged him not to shoot, [defendant] fired a shot that went through the passenger side front door. Then he moved in front of the passenger window, with the muzzle of the shotgun in the car, and fired two more shots that hit Cook's right shoulder and left arm. He fired again and hit Emine in the back as she attempted to turn away. He fired one more shot that hit Cook in the center of his chest. [Defendant] and the other male ran away and Cook got out of the car in a daze. A neighbor took him to the hospital where he blacked out and went into a coma. Police were called and medics took Emine to the hospital. Although she was pronounced dead at 1:47 a.m., doctors were able to save

her baby through a Cesarean Section. A baby girl ("Baby Cook") was delivered at 28 weeks old in extreme critical condition.

Emine died as a result of a single shotgun wound to her upper back. Cook woke up from his coma two weeks later. He remained in the hospital for two-and-one-half months and went through nine or ten surgeries. He still suffers from his injuries. Baby Cook was in the hospital for six months. She is now two years old and cannot talk. She requires special medical care that includes the use of a feeding tube.

Trial Court Opinion, filed August 11, 2010.

## III. DISCUSSION

If court-appointed counsel for a PCRA petitioner determines that the issues the petitioner raises for collateral review are meritless, and the PCRA court concurs, counsel may withdraw and the petitioner may proceed *pro se*, by privately retained counsel, or not at all. *Finley*, 550 A.2d at 218. To be permitted to withdraw, petitioner's counsel must file a no-merit letter, or "*Finley* letter," detailing the nature and extent of counsel's review and listing each issue the petitioner wished to raise, with counsel's explanation as to why the issues are meritless. *Commonwealth v. Pitts*, 981 A.2d 875, 876 (Pa. 2009) (quoting *Finley*, 550 A.2d at 215). After reviewing a *Finley* letter, the PCRA court is required to independently review the record to evaluate the petitioner's claims. *Id.* A PCRA petition may be dismissed without a hearing if the Court determines that there are no claims of arguable merit and no purpose would be served by further proceedings. *Commonwealth v. Lignons*, 971 A.2d 1125, 1143 (Pa. 2009); *see* Pa.R.Crim.P. 907(1).

In his *pro se* PCRA petition, defendant claimed that he was entitled to collateral relief on the following grounds: 1) trial counsel was ineffective for failing to object to object to the jury being permitted to review a police photo array containing defendant without also having the statements of witnesses Cook-Powell and Watts; 2) trial counsel was ineffective for failing to object to hearsay testimony from Cook; and 3) trial counsel was ineffective for failing to call defense witnesses. PCRA Petition at pp. 3-4. Defendant further claimed ineffective

4

assistance of PCRA counsel in his Response to the Court's 907 Notice. 907 Response at ¶¶ 9, 11. Each of defendant's claims is considered below.

A. *Ineffective Assistance of Counsel*

Three of defendant's claims are premised upon his contention that he received ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008), *appeal denied*, 956 A.2d 433 (Pa. 2008).

1. Failure to Request that Witness Statements be Sent Out to Deliberating Jury

Defendant first claims "the Court committed an error of law by determining that trial counsel...was not constitutionally ineffective in that trial counsel permitted, without objection, the jury to review during deliberation the unduly suggestive photo-array without

5

also having the related witnesses Cassandra Cook-Powell and Kenneth Watts' statement to police." Statement of Errors at ¶ 2(a). This claim is without merit.

The Rules of Criminal Procedure provide that, "[u]pon retiring, the jury may take with it such exhibits as the trial judge deems proper except [that]...[d]uring deliberations, the jury shall not be permitted to have: (1) a transcript of any trial testimony; (2) a copy of any written or otherwise recorded confession by the defendant; (3) a copy of the information; [or] (4) written jury instructions." Pa.R.Crim.P. 646. In general, a jury should be permitted to review materials during deliberations where those materials inform the jury and aid it in the determination of the facts. *Commonwealth v. Lilliock*, 740 A.2d 237, 243 (Pa. Super. 1999), *appeal denied*, 795 A.2d 972 (Pa. 2000). However, a Court should not allow the jury to possess an exhibit if it is likely that the jury would skew its importance or give it undue emphasis. *Commonwealth v. Dupre*, 866 A.2d 1089, 1102 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005); *Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa. 2003); *Commonwealth v. Riggins*, 386 A.2d 520, 525 (Pa. 1978). So long as an exhibit is not specifically prohibited by the rule from being submitted to the jury, a trial court's decision to grant or deny jury access to such an exhibit will not be reversed absent an abuse of discretion. *See e.g., Commonwealth v. Bango*, 742 A.2d 1070, 1072 (Pa. 1999); *Riggins, supra*, 386 A.2d at 525.

Here, the deliberating jury requested that the judge send out the statements of Cook-Powell and Watts and the photo spread. However, while the statements of Cook-Powell and Watts were identified by the witnesses and admitted into evidence, the contents of the statements were never read to the jury. N.T. 3/2/10 at 45-47; N.T. 2/23/10 at 18-19, 101. The sole use of the statements at trial was to confirm that these witnesses were interviewed by, and gave statements to, the police. For that reason, it would have been manifestly inappropriate for the trial judge to send out the statements to the jury and have the jurors, during

6

deliberations, see the contents of the statements for the first time. Accordingly, Judge Temin denied the jurors request for the statements. N.T. 3/2/10 at 45-47. Because the record establishes that Judge Temin's decision was reasonable, defense counsel had no valid ground for objecting to the Court's ruling and, therefore, could not have been ineffective for failing to do so. No relief is due.

2. Failure to Object to Hearsay Testimony

Defendant next claims that the Court erred in "determining that trial counsel's [sic] were not constitutionally ineffective for failing to move to stricken [sic] prejudicial hearsay testimony elicited from Kevin Cook, and failing to request for a curative instruction." Statement of Errors at ¶ 2(b). From defendant's PCRA Petition, it is apparent that defendant is referring to testimony by Cook, in which he stated that he had told his brother-in-law, Charles Powell, that "Tyree [the defendant] shot me." According to defendant, Cook's out-of-court statement to Powell identifying defendant as the shooter was hearsay, since it was offered to prove the truth of the matter asserted, that is, that defendant was the person who shot Cook. PCRA Petition at p. 22-24.

This claim is frivolous. Rule 803.1(2) provides for an exception to the hearsay rule for "[a] prior statement by a declarant-witness identifying a person or thing, made after perceiving the person or thing, provided that the declarant-witness testifies to the making of the prior statement." Pa.R.E. 803.1(2). Under this rule, a witness may testify to any prior identification that he or she made, so long as the witness testifies at trial and is subject to cross-examination. Because any such prior identification is admitted as an exception to the hearsay rule, it is properly considered by the factfinder for the truth of the matter asserted. *See* Pa.R.E. 803.1(2); *Commonwealth v. Wilson*, 861 A.2d 919, 920 (Pa. Super. 2004). Because the testimony here at issue was admissible under an exception to the hearsay rule, counsel could not have been

7

ineffective for failing to move to strike it or for failing to request a curative instruction. No relief is due.

3. Failure to Call Defense Witnesses

Defendant next claims that the Court erred by "determining that trial counsel's [sic] were not constitutionally ineffective for failing to investigate and call...Belinda Hamilton and Omar, whom testimonies could have been capable of casting doubt upon the prosecution witnesses truthfulness." Statement of Errors at ¶ 2(c). This claim is without merit.

In order to prevail on a claim that trial counsel was ineffective in failing to call a witness, the petitioner must plead and prove "that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial to have denied [the defendant] a fair trial." *Commonwealth v. Walls*, 993 A.2d 289, 302 (Pa. Super. 2010) (quoting *Commonwealth v. Wright*, 961 A.2d 199, 155 (Pa. 2001)).

In his PCRA Petition, defendant asserts that trial counsel should have called Belinda Hamilton as a witness in order to impeach Kenny Watts' testimony that defendant said "Do I need to get my pump?" and "Its' on and popping." PCRA Petition, p. 36-38. However, nothing in the record supports defendant's assertion that the absence of Hamilton's testimony was prejudicial to his case.

As to defendant's reference to his "pump,"[1] it is true that Watts testified that he had a telephone conversation with defendant during which defendant told Watts, "Do I have to go get the pump? Do I need the pump?," after Watts told defendant that Cook-Powell was trying to contact defendant about the money defendant owed her. N.T. 2/23/10 at 94-96. However,

---

[1] A "pump" is a street term for a shotgun. N.T. 2/23/10 at 96.

8

there is nothing in the evidence suggesting that Hamilton was present at the time and could have impeached Watts' testimony about that conversation. *Id.*

Watts also testified that the day after Cook-Powell broke the windows at defendant's house, defendant's girlfriend, Jillian Sanders, called Watts to complain. While talking with Sanders, Watts could hear defendant in the background say, "Its on and popping." N.T. 2/23/10 at 96-97. It is true that Hamilton, in a statement that she gave to the police, stated that she was with Watts when he received the telephone call from Sanders and that she "could overhear what they were saying." Exhibit E to PCRA Petition (Hamilton's statement) at 1. It is further true that Hamilton's statement makes no reference to any statements made by defendant during that telephone call. *Id.* Assuming *arguendo* that Hamilton was available to testify at trial and would have testified consistent with her statement, there is no reason to believe that she would have substantially impeached Watts' testimony. First, Hamilton was never *asked*, during her statement, whether she could overhear any statements of defendant in the background or otherwise. Second, the fact that Hamilton, who was not on the phone during the conversation between Sanders and Watts, could not hear a speaker in the background on the other end of the call would be expected and not surprising. In any event, the absence of Hamilton's proffered testimony certainly was not sufficiently prejudicial as to have denied defendant a fair trial.

Moreover, defendant never averred in his petition that Hamilton was now available to testify, and PCRA counsel avers that Hamilton cannot be located. That is also fatal to defendant's claim.

As to counsel's failure to call "Omar," the record establishes that trial counsel, at defendant's request, sent an investigator to a bar to explore an alibi claimed by defendant, and that the defense investigator interviewed a bartender named, "Omar." N.T. 2/25/2010 at 80. According to trial counsel's representation to the Court during the trial, "Omar told us that he

9

didn't recall anything, didn't know [defendant], didn't know anything about anything. So that was all the information that we got about the alibi." N.T. 2/25/2010 at 80. While defendant avers in the petition that the investigator's interview of Omar was "specious," he proffers nothing to suggest that "Omar," if available, would be in any way helpful to the defense. Moreover, PCRA counsel avers that he has received no information enabling him to identify "Omar" or to locate him.

The record therefore demonstrates that defendant was not denied effective assistance of counsel due to trial counsel's failure to call witnesses Hamilton and "Omar." This Court, therefore, did not err in denying defendant relief on this claim.

B. *Court Error in Denying Petition without Hearing and Denying Request to Amend Petition*

Finally, defendant asserts that the Court erred by denying defendant's PCRA Petition without a hearing and by denying defendant's 907 Response request for permission to amend the petition to assert a claim of ineffective assistance of PCRA counsel. Statement of Errors at ¶ 2(d). These claims are without merit.

Defendant's claim that the court erred by dismissing the PCRA Petition without a hearing fails to specify any substantive claims for relief for which there were any genuine issues of fact that would require a hearing. Therefore, no relief is due on this claim.

In his 907 Response, defendant requested leave to amend his petition to add a claim of ineffectiveness of PCRA counsel, Mr. Lammendola. Defendant further asserts that Mr. Lammendola was ineffective for failing "to understand the evolution of the standard for ineffective assistance of trial counsel." 907 Response at ¶ 16. For the reasons stated above, defendant's underlying claims are without merit. Because all of the underlying claims are without merit, the derivative claim of PCRA counsel's ineffectiveness is equally meritless.

## IV. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing Defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J

11