742 A.2d 1070

COMMONWEALTH of Pennsylvania, Appellee,

v.

David John BANGO, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 1998.

Decided Dec. 20, 1999.

Michael Handler, for David John Bango.

Andrea F. McKenna, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

This Court granted review in this matter to determine whether the Superior Court erred in concluding that the trial court did not abuse its discretion by permitting the jury to review transcripts of tape-recorded conversations during its deliberations. For the reasons that follow, we affirm the Superior Court.

On June 12, 1995, appellant was tried before a jury on twenty-eight counts of Possession with Intent to Deliver a Controlled Substance [1] and one count of Criminal Conspiracy.[2] The crux of the prosecution's case against appellant consisted of fifty-three tape-recorded conversations that took place between appellant and approximately seventeen different people. Unbeknownst to appellant, the police had placed a court-authorized wiretap on two telephones in the bar where he worked and had secretly recorded his telephone conversations pertaining to the potential sale or trade of controlled substances.[3] In addition, the police had placed a body wire on an informant in order to record several face-to-face drug transactions with the appellant.

At appellant's trial, the prosecution played each of the fifty-three tape-recorded conversations to the jury. Prior to playing the tapes, the prosecution distributed previously-prepared transcripts of the tapes to each member of the jury to assist them in following the conversations.[4] In addition, Pennsylva-

1. 35 P.S. § 780–113(a)(30).

2. 18 Pa.C.S. § 903.

3. The audiotapes were acquired pursuant to the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701 *et seq.* After taping these conversations, the police secured the cooperation of many of the individuals whose telephone conversations with appellant had been recorded.

4. Before the trial judge permitted the prosecution to distribute the transcripts, he cautioned the jury that the tapes, and not the transcripts, were the actual evidence. In addition, the judge noted that the only

nia State Trooper Vincent Pothoff, who had prepared the transcripts for each of the taped conversations, testified as to whose voices were about to be heard on the tapes and as to the date and/or time that the conversation was recorded. After each of the tapes was played for the jury, Trooper Pothoff testified as to the substance of the conversation that the jury had just heard. Additionally, nine of the individuals whose voices were heard on the tape recordings testified that they had listened to the tapes as the tapes were being played for the jury and agreed that it was their voices that had been captured on the tapes. These individuals also testified that they agreed with Trooper Pothoff's trial characterization of the conversations.

Near the close of its case, the prosecution moved for the admission of its exhibits into evidence, including the transcripts of the tape-recorded conversations. The trial judge admitted the transcripts into evidence over the objection of appellant's trial counsel.[5] At the time the trial judge admitted the transcripts into evidence, however, he also ruled that the transcripts would not go out with the jury during its deliberations.

After approximately two hours of deliberation, the jury sent a note to the trial judge with several requests. First, the jury asked that the names of the individuals who were involved with appellant in each of his twenty-eight counts of Possession

purpose for the transcripts was to aid the jury in following the taped conversations. Finally, the judge instructed the members of the jury that, if they found there to be any discrepancies between the tapes and the transcripts, they were to resolve those discrepancies in favor of the tapes. The trial judge repeated these instructions at least three times during the course of the trial. N.T. 6/12/95 at 25, 32; 6/13/95 at 106, 120.

5. The Superior Court erroneously assumed that the transcripts had not been admitted into evidence. *Commonwealth v. Bango*, 454 Pa.Super. 339, 342, 685 A.2d 564, 565 (1996). Accordingly, the Superior Court proceeded to consider the question of whether transcripts that had not been admitted into evidence could be given to the jury during its deliberations. Since the record reflects that the transcripts were in fact admitted into evidence, the question of whether the trial court abused its discretion in permitting the jury to deliberate with items that have not been admitted into evidence is not before this Court.

With the Intent to Deliver be listed on the verdict slip next to the applicable count(s). In addition, the jury asked for permission to review the fifty-three tape recordings and their corresponding transcripts. The trial judge discussed the jury's request with both counsel and appellant's trial counsel objected to the transcripts going out with the jury during its deliberations. The trial judge overruled counsel's objection and allowed the transcripts to go out with the jury with the following instruction:

Again, and this is really important and I want to really stress this to you, in deliberations those transcripts are not the evidence. The evidence is the tapes and so that is what you should rely on and not the transcripts but I will send the transcripts out with you to help you identify what tape it is that you are looking for and listening to and guide you somewhat as to what you are hearing but again I can't stress this strongly enough that the tapes themselves and what is on those tapes is the evidence that you should consider.

N.T. 6/16/95 at 424.

The jury completed its deliberations and reached a verdict approximately twenty minutes after the trial judge granted the jury's request to review the tape recordings and their corresponding transcripts. The jury found appellant guilty of twenty-three counts of Possession with Intent to Deliver a Controlled Substance and one count of Criminal Conspiracy. On July 13, 1995, appellant was sentenced to an aggregate term of six to eighteen years' imprisonment. On appeal, the Superior Court affirmed appellant's judgment of sentence. This Court granted allocatur to determine whether the trial court abused its discretion in allowing the jury to review the transcripts of the tape-recorded conversations during its deliberations.

Rule 1114 of the Pennsylvania Rules of Criminal Procedure states that "... the jury may take with it [during deliberations] such exhibits as the trial judge deems proper." Pa. R.Crim.P. 1114(1). Nevertheless, there are some items that the jury is never permitted to take with it during its delibera-

tions. These prohibited items include: transcripts of any trial testimony, copies of any written or otherwise recorded confessions by the defendant, copies of the information, and written jury instructions. *See* Pa.R.Crim.P. 1114(2); *Commonwealth v. Karaffa*, 551 Pa. 173, 709 A.2d 887, 888 (1998)(reaffirming *Commonwealth v. Oleynik*, 524 Pa. 41, 568 A.2d 1238 (1990)).

The transcripts given to the jury in the instant case do not fall into any of the categories of items specifically prohibited either by Pa.R.Crim.P. 1114(2) or by case law. Therefore, we must determine whether the trial court abused its discretion by permitting the jury to review the transcripts in conjunction with the tapes during its deliberations. *Commonwealth v. Hawkins*, 549 Pa. 352, 393, 701 A.2d 492, 512 (1997)(trial court's decision as to which exhibits may be taken out with the jury will not be reversed absent abuse of discretion so long as exhibits are not strictly prohibited by court rule or case law). We will deem a trial court to have abused its discretion only if we determine that the trial court's ruling exhibited manifest unreasonableness, partiality, prejudice, bias or such lack of support as to render it clearly erroneous. *Paden v. Baker Concrete Constr., Inc.*, 540 Pa. 409, 413, 658 A.2d 341, 343 (1995). We will not condemn a trial court's ruling as an abuse of discretion merely because we might have reached a different conclusion had the decision been ours in the first instance. *Id.*

Here, in light of the meticulous care taken by the trial court to ensure that the jury understood that the transcripts were to be used only as guideposts and not as verbatim translations, we cannot characterize the trial court's decision to permit the jury to use the transcripts as manifestly unreasonable. *Hawkins, supra.* It is axiomatic that a trial is a search for the truth. The jury should be assisted, not hindered, in conducting that search. Here, it is plain that the jury was seeking a complete understanding of how the voluminous evidence related to the specific crimes with which appellant was charged. After two hours of deliberation, the jury asked for the name of each person involved with appellant in

each count as well as the tapes and transcripts pertaining to those counts. The trial court properly realized that the transcripts could serve as an index to the tapes, assisting the jurors in finding those tapes that they wished to replay and allowing them to more easily correlate which of the seventeen recorded voices they were listening to with the corresponding counts charged against appellant. Not only did the trial court appropriately instruct the jurors that they could review the transcripts for these narrowly circumscribed purposes, but the court also clearly instructed the jury that they, as jurors, were independently responsible for ascertaining the *content* of the tapes. Under these somewhat daunting factual circumstances, with the jury attempting to match a large number of unfamiliar tape-recorded voices to an even larger number of counts describing disparate incidents of narcotics trafficking, the trial court prudently addressed the situation by permitting the jury to use the transcripts as limited guideposts to the recordings. Far from exhibiting manifest unreasonableness, the trial court's decision was grounded in common sense and allowed the jury to evaluate and weigh the evidence in an efficient and reliable manner. Thus, the trial court did not abuse its discretion.

As the Superior Court properly noted, this is the conclusion that has been reached uniformly by the federal circuit courts that have addressed this issue, all of which have determined that it is permissible for jurors to review transcripts of tapes so long as a limiting instruction is issued and the person responsible for the transcription can be cross-examined with the opportunity for an alternative transcription to be presented by the defendant. *See, Commonwealth v. Bango,* 454 Pa.Super. 339, 343, 685 A.2d 564, 565–66 (1996), *citing United States v. Scarborough,* 43 F.3d 1021 (6th Cir.1994), *United States v. Crowder,* 36 F.3d 691 (7th Cir.1994), *cert. denied,* 513 U.S. 1171, 115 S.Ct. 1146, 130 L.Ed.2d 1105 (1995), *United States v. Taghipour,* 964 F.2d 908 (9th Cir.1992), *cert. denied,* 506 U.S. 899, 113 S.Ct. 283, 121 L.Ed.2d 210 (1992), *United States v. Nixon,* 918 F.2d 895 (11th Cir.1990), *United States v. Puerta Restrepo,* 814 F.2d 1236 (7th Cir.1987), *United States v. Costa,* 691 F.2d 1358 (11th Cir.1982), *United States v.*

*Turner,* 528 F.2d 143 (9th Cir.1975), *cert. denied sub nom., Grimes v. United States,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975) and *Hackett v. United States,* 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). *See also, United States v. Ademaj,* 170 F.3d 58 (1st Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 206, 145 L.Ed.2d 73 (1999); *United States v. Plunk,* 153 F.3d 1011 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1376, 143 L.Ed.2d 535 (1999); *United States v. Magana,* 118 F.3d 1173 (7th Cir.1997), *cert. denied,* 522 U.S. 1139, 118 S.Ct. 1104, 140 L.Ed.2d 158 (1998); *United States v. Holton,* 116 F.3d 1536 (D.C.Cir.1997), *cert. denied,* 522 U.S. 1067, 118 S.Ct. 736, 139 L.Ed.2d 673 (1998); *United States v. Delpit,* 94 F.3d 1134 (8th Cir.1996); *United States v. Elder,* 90 F.3d 1110 (6th Cir.1996), *cert. denied,* 519 U.S. 1131, 117 S.Ct. 993, 136 L.Ed.2d 873 (1997); *United States v. Rosa,* 17 F.3d 1531 (2d Cir.1994), *cert. denied,* 513 U.S. 879, 115 S.Ct. 211, 130 L.Ed.2d 140 (1994); *United States v. Pecora,* 798 F.2d 614 (3d Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); and *United States v. Rivera,* 778 F.2d 591 (10th Cir.1985), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1384, 89 L.Ed.2d 609 (1986). We cannot discern any policy considerations that militate against the weight of the overwhelming federal precedent on this subject. Indeed, it would be illogical and unfair to allow jurors to render a verdict on the basis of faulty recollection of evidence instead of the evidence itself. We cannot discern any reason why the jurors should be compelled to rely on their fleeting memories of the evidence when the evidence itself is readily available. In short, sound policy considerations militate in favor of interpreting Pa. R.Crim.P. 1114 so as to allow jurors to view evidence, such as the transcripts herein, with the precautions that were taken by the trial judge.

In sum, we conclude that the trial court did not abuse its discretion by permitting the jury to view the transcripts. Accordingly, we affirm.

Justice CAPPY concurs in the result.

Justice NIGRO files a dissenting opinion in which Justice ZAPPALA joins.

NIGRO, Justice, dissenting.

I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion by permitting the jury to review transcripts of tape-recorded conversations during its deliberations. Accordingly, I dissent.

The majority correctly notes that since the transcripts given to the jury in the instant case do not fall into any of the categories of items specifically prohibited by Pa.R.Crim.P. 1114(2) or the case law, the question becomes whether the trial court abused its discretion by permitting the jury to review the transcripts during its deliberations. *See, e.g., Commonwealth v. Hawkins,* 549 Pa. 352, 701 A.2d 492, 512 (1997)(trial court's decision as to which exhibits may be taken out with the jury will not be reversed absent abuse of discretion so long as exhibits are not strictly prohibited by court rule or case law). An abuse of discretion will only be found where a lower court has " 'overridden or misapplied [the law], or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record. . . .' " *Commonwealth v. Rucci,* 543 Pa. 261, 285, 670 A.2d 1129, 1141 (1996)(quoting *Melzer v. Witsberger,* 505 Pa. 462, 475, 480 A.2d 991, 997 (1984)). Where the probative value of properly admitted evidence outweighs its prejudicial value, there is no abuse of discretion. *Id.,* 543 Pa. at 286, 670 A.2d at 1141.

Appellant argues that the trial court abused its discretion by permitting the transcripts to be sent out with the jury during its deliberations because the transcripts have the same potential to be unduly emphasized by the jury during its deliberations as does transcribed trial testimony, which is prohibited from being sent out with the jury by Pa.R.Crim.P. 1114(2). Furthermore, Appellant contends that the procedural safeguards present in the instant case [1] were insufficient to

---

1. The procedural safeguards that Appellant refers to were his opportunity to challenge the accuracy of the transcripts both prior to and during his trial and the cautionary instructions that the trial court gave the jury concerning the limited purpose for which it could use the transcripts.

ameliorate the prejudicial effect of the jury's opportunity to review the transcripts during its deliberations. I agree.

The Pennsylvania Rules of Criminal Procedure have been designed in part to ensure that jury verdicts are based on jurors' collective recollection of all of the evidence and testimony presented to them during the course of the trial. Therefore, the Rules attempt to limit the opportunity for juries to unduly emphasize individual pieces of evidence. For example, Pa.R.Crim.P. 1113 prohibits jurors from taking notes during the course of trials because they might place undue emphasis and reliance on their notes, rather than rely on their collective recollection of the evidence and testimony presented at the trial. *See* Pa.R.Crim.P. 1113; *Thornton v. Weaber,* 380 Pa. 590, 596–97, 112 A.2d 344, 347–48 (1955)(discussing rationale underlying the prohibition of juror note-taking in the Commonwealth of Pennsylvania); *see also Commonwealth v. Kelly,* 245 Pa.Super. 351, 373, 369 A.2d 438, 451 (1976)(Hoffman, J. dissenting). Similarly, Pa.R.Crim.P. 1114(2) prohibits trial judges from permitting a jury to review transcripts of trial testimony during its deliberations, because of the risk that the jury will place undue emphasis on the testimony set forth in the transcripts and abandon its duty to rely on its collective recollection of the evidence and testimony presented at trial. *See* Pa.R.Crim.P. 1114(2); *Commonwealth v. Canales,* 454 Pa. 422, 427–28, 311 A.2d 572, 575 (1973)(discussing rationale underlying the long-standing rule in the Commonwealth of Pennsylvania that portions of trial transcripts may not be sent out with the jury during its deliberations).

In the instant case, the majority concludes that the trial court did not abuse its discretion by permitting the transcripts to go out with the jury during its deliberations because the trial court gave cautionary instructions to the jury concerning the limited purpose for which it could use the transcripts. However, the prejudicial effect of the transcripts in the instant case is not grounded in the failure of the trial court to adequately instruct the jury as to the limited purpose(s) for which it could use them. Rather, the prejudicial effect of the transcripts is grounded in the opportunity for the jury to place

undue emphasis on the contents of the transcripts, and in the danger that the availability of the transcripts in its deliberations will prompt the jury to abandon its responsibility to rely on its collective recollection of the evidence and testimony presented during the trial.[2]

Therefore, I agree with Appellant that the procedural safeguards that were present in the instant case did not, and could not, ameliorate the prejudicial effect of the jury's opportunity to review the transcripts during its deliberations. In addition, I believe that the dangers to the deliberative process that are created when a trial court permits a jury to review transcripts of tape-recorded conversations during its deliberations outweigh any potential probative value that the transcripts may have. Accordingly, I would find that the trial court's decision to permit the jury to review the transcripts of the tape-recorded conversations during its deliberations was manifestly unreasonable, and therefore constituted an abuse of its discretion.

Justice ZAPPALA joins in the Dissenting Opinion.

**2.** In my view, the transcripts of the tapes provided to the jury during its deliberations in the instant case were tantamount to transcripts of trial testimony, which juries are never permitted to take with them during their deliberations pursuant to Pa.R.Crim.P. 1114(2). In much the same manner as calling individuals to testify at trial, playing the tapes for the jury allowed it to hear Appellant and numerous other individuals relay information concerning the drug transactions which formed the basis of the Commonwealth's case against Appellant. Therefore, I fail to see an appreciable distinction between permitting a jury to review transcripts of live trial testimony and permitting the jury in the instant case to review the transcripts of the tape-recorded conversations. In addition, I see little difference between permitting the jury to review a defendant's recorded confession during its deliberations, which is prohibited by Pa.R.Crim.P. 1114(2), and permitting the jury to review the transcripts during its deliberations in the instant case. In the taped conversations that were the subject of the transcripts here, Appellant himself discussed multiple potential purchases and sales of illegal drugs. Although the tapes do not technically constitute confessions by Appellant to the crimes with which he was charged, I believe that the potential prejudicial effect of the transcripts is similar, if not identical to the prejudicial effect that would result from the jury having an opportunity to review a defendant's recorded confession during its deliberations.